DOWD, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| United States of America, ) | |
| ) | CASE NO. 1:07 CR 338 |
| Plaintiff, ) | |
| ) | |
| v. ) | MEMORANDUM OPINION |
| ) | |
| Arkeefe Sherrills, ) | |
| ) | |
| Defendant. ) | |
| ) | |

I.  Introduction

The defendant was found guilty following a jury trial on a series of counts.  He was found guilty of count 1 alleging conspiracy to possess with intent to distribute cocaine and PCP. He was also found guilty of count 5 alleging the substantive crime of possession with intent to distribute cocaine.  Additionally, the defendant was found guilty of counts 8, 11-14, 17-18, 22-23, 26, 28-29, 34, and 36-38, each alleging the offense of the unlawful use of a communication facility to facilitate the commission of a drug trafficking offense.  Finally, the defendant was found guilty of conspiracy to commit money laundering as charged in count 39.

The final presentence report is dated July 21, 2008.  However, after the preliminary presentence report was submitted to counsel, counsel for the defendant filed a 33 page objection to the presentence report together with a memorandum of law in support of the objections.  *See* Docket 527.  The government then responded with a sentencing memorandum 44 pages in length plus appendices numbering five pages.  *See* Docket 533.

The trial in this case was conducted by District Court Judge John Adams under

(1:07 CR 338)

circumstances approved by Chief Judge James Carr.  *See* Docket No. 300.

In preparation for the sentencing of the defendant and co-defendant Shaneka Pittman, the Court has ordered and read the entire transcript of the lengthy trial that resulted in the convictions of the defendant and co-defendant Shaneka Pittman.

## II.  The Calculation of the Total Offense Level as Presented in the Presentence Report of July 21, 2008

(a)   The base offense level as calculated in paragraph 51 calls for either 36 or 38 levels.

The text of paragraph 51 of the presentence report follows:

> **Base Offense Level:**  The United States Sentencing Commission Guideline for violation of 21 U.S.C. § 841 (b)(1)(A) and 846 is found in U.S.S.G. § 2D1.1.  According to the Offense Conduct section, this defendant's criminal activity involved at least 50 kilograms but less than 150 kilograms of cocaine and 7 kilograms of PCP.  Using the marijuana equivalency tables, 50 to 150 kilograms of cocaine equates to 10,000 to 30,000 kilograms of marijuana (1 gram of cocaine = 200 grams of marijuana) and 7 kilograms of PCP equates to 7,000 kilograms of marijuana (1 gram PCP = 1 kilogram of marijuana).  Therefore, the total amount of cocaine and PCP converted to marijuana is between 17,000 to 37,000 kilograms of marijuana.  The offense level specified in the **Drug Quantity Table** under U.S.S.G. § 2D1.1(c)(2), sets a Base Offense Level of 36 (10,000 to less than 30,000 kilograms of marijuana) or 38 (30,000 or more kilograms of marijuana).

The Court, in the exercise of leniency, has determined that the base offense level is 36.

(b)   Specific offense characteristic:  Pursuant to 2D1.1(b)(1), a dangerous weapon (including a firearm) was possessed and increase by 2 levels.

(c)   Paragraph 54 added four levels pursuant to U.S.S.G. § 3B1.1(a) as the defendant was the organizer or leader of five or more participants in the offense.

(1:07 CR 338)

  (d)  Two levels were added for obstruction of justice pursuant to U.S.S.G. § 3C1.1.[1]

  As a consequence, the Court determines that the adjusted offense level as provided in the presentence report is 42.

  Prior to the commencement of the trial, the government filed a Notice of Enhancement claiming that the defendant, Arkeefe Sherrills, had two prior drug felony convictions and based on that declaration of fact, the government contends that the defendant is subject to a mandatory life sentence due to his conviction of count 1 and pursuant to the enhanced penalty under § 841(b)(1).

### III.  The Defendant's Objections to the Calculation of the Adjusted Offense Level

  (a)  The defendant should not be subject to increased statutory penalties under 21 U.S.C. § 841(b)(1) and 851 based on his prior record

  (b)  Regardless of whether or not the defendant's prior convictions may trigger the enhanced penalty, a sentence of life imprisonment in this case is greater than necessary to achieve the goals of sentencing, in direct conflict with the sentencing mandate under 18 U.S.C. § 3553(a).

  (c)  The government has not demonstrated, under any standard of proof, the amount of drugs attributed to the defendant.

  (d)  The defendant should not receive a § 3B1.1 aggravating role enhancement.

  (e)  The defendant should not receive a § 3C1.1 obstruction of justice enhancement.

---

[1] For reasons set forth later on in this opinion, the Court has determined that the two levels for obstruction of justice should not be added, so that the base offense level is 42.

3

(1:07 CR 338)

## IV.  An Analysis of the Defendant's Sentencing Memorandum Supporting the Above-Described Objections in III and the Response by the Government in its Sentencing Memorandum Together with the Court's Ruling

(a)     The defendant advances several reasons why he should not be subject to the mandatory life sentence arising from his conviction for count 1.

First, the defendant contends that the issue of his prior drug felony convictions was an issue for the jury and not the Court.  Specifically, the defendant argues that the decision in *Shepard v. United States*, 125 S.Ct. 1254 (2005) forecast that the previous rule set forth in *Almendarez-Torres v. United States*, 523 U.S. 224 (1998) will soon be overruled by the Supreme Court and requiring that the fact of  the allegation of prior drug felony convictions be submitted to and decided by the jury and not the trial court.  The defendant's prediction may well come to past, but in the meantime, the Court will follow the dictates of *Almendarez-Torres v. United States*.

Second, the defendant raises the question as to whether the defendant's prior drug conviction in Ohio as set forth in the prior notice by the prosecution and further defined in the presence report at paragraph  68, is, in fact, a felony drug offenses.  The Notice of Enhancement filed by the government on January 4, 2008, (Docket No. 368) described the defendant's conviction in United States District Court for the Eastern District of Missouri and the defendant's second felony drug conviction on September 29, 2005, in Cuyahoga County Common Pleas Court for "possession of drugs" in case number CR-04-459452,  (emphasis added).  The presentence report recites the fact that the defendant was convicted of drug possession in the Cuyahoga County Common Pleas Court on November 23, 2004, in case

4

(1:07 CR 338)

number <u>CR-04-459061,</u> (emphasis added).[2]

However, the government's sentencing memorandum filed on July 16, 2008 (Docket No. 533) identifies the fact of a felony drug conviction for a defendant known by the name of Arkeefe Sherrills. The Court understands the defendant's sentencing memorandum does not take issue with the fact of the Cuyahoga County drug conviction, but rather contends that the information supplied is insufficient to count the Cuyahoga County Common Pleas Court conviction as a drug felony conviction.

The government, in its responsive sentencing memorandum, has attached to it five separate documents attached hereto as Appendix I, pages 1 through 5 and which accurately reflect that the defendant, Arkeefe Sherrills, was indicted for a felony drug crime in the first count which stated that the date of the offense to be November 18, 2004 and alleged that the defendant "did knowingly obtain, possess or use a controlled substance, to wit: Cocaine, a Schedule II drug, in an amount equal to or exceeding 25 grams but less than 100 grams." (*See* page 1 of Appendix I.) The second page of Appendix I constitutes a Journal Entry in the Court of Common Pleas, Cuyahoga County, indicating that "on a former day of the court the defendant plead guilty to drug possession / 2925.11 - F4 as amended in count(s) of the indictment. That second page of the appendix also indicates that the defendant received a sentence to the Lorain Correctional Institution of 12 months. Page 3 and 4 of Appendix I constitute a report from the County Sherriff's office of Cuyahoga County describing the arrest of "Mr. Arkeefe Sherrills."

---

[2]The Court finds that the Notice of Enhancement mistakenly described a second drug felony conviction for the defendant and places an issue the question of whether the Notice of Enhancement (Docket No. 368) is enforceable.

(1:07 CR 338)

The fifth page of Appendix I is entitled "Case Information Form for the Cuyahoga County Justice System" and involves Arkeefe Sherrills with an alias of Daude Larmar Sherrills living in Los Angeles, California, black, male, age 38, height 6'1" and weight of 175 pounds.

In the Court's view against the background of the fact that the defendant's sentencing memorandum does not contest that the defendant is the person named in the Cuyahoga County Common Pleas Court prosecution, the Court finds that the government has established the fact of two prior drug felony convictions for the defendant. Against that background, the ineffective enhancement notice is not relevant in the context of the defendant's sentencing.

Third, the defendant contends that it cannot be said with certainty that the defendant's felony drug conviction, as set forth in paragraph 68 of the presentence report, was a punctuated occurrence with a limited duration separate from the conspiracy charged in count 1 and directs the Court's attention to *United States v. Thomas*, 211 F.3d 316 (6th Cir. 2000), *United States v. Graves*, 60 F.3d 1183, 1187 (6th Cir. 1995) and *United States v. Hughes*, 924 F.2d 1354, 1361-1362 (6th Cir. 1990). The Court finds the analysis in Hughes dispositive as the Hughes court stated:

> We conclude that the district court properly determined that the twenty-year mandatory minimum applied to Hughes because, at the time of his offense, Hughes had a prior felony drug conviction which arose from a separate criminal episode, an offense that was distinct in time. An episode is an incident that is part of a series, but forms a separate unit within the whole. Although related to the entire course of events, an episode is a punctuated occurrence with a limited duration. The criminal events that constitute the bases for Hughes' conviction for possession of cocaine and his subsequent conviction for conspiracy do not represent a single criminal episode. Such events occurred at distinct times spanning a nine-month period. The initial drug raid, which precipitated the

6

(1:07 CR 338)

>state conviction, occurred on March 4, 1988. The drug raid which gave rise to Hughes' conspiracy conviction occurred on December 6, 1988. The conspiracy, alleged to have commenced on March 1, 1988, ceased more than nine months *after* the conviction for possession of cocaine became final. The possession of cocaine constituted one episode which concluded with the first drug raid on March 4, 1988. In contrast, the conspiracy to possess with intent to distribute and to distribute cocaine constituted another episode that did not conclude until December 6, 1988. While the raids occurred at the same residence and involved the same type of controlled substance, the intervening amount of time and the finality of the state felony drug conviction lead us to conclude that the twenty-year mandatory minimum was properly applied.
>
>Our finding that the state felony conviction is a proper predicate for sentencing enhancement within the meaning of § 841(b)(1)(A) is further supported by an examination of the facts of this case in light of the statute's legislative purpose to punish recidivists more severely. After Hughes' state felony conviction, which became final in September 1988, Hughes was given ample opportunity to discontinue his involvement in unlawful drug-related activity. That the conspiracy was intact some nine months after the March 4, 1988, raid and three months after the resulting conviction heightens Hughes' culpability. Hughes' repeated criminal behavior is the kind Congress targeted for imposition of a harsher penalty by § 841(b)(1)(A).

The first count of the superseding indictment charging the drug conspiracy named the defendant, Arkeefe Sherrills and 19 other defendants and placed the conspiracy as beginning as early as June of 2004 and continuing through May, 2007. The date of the conduct leading to the defendant's conviction in Cuyahoga County is November 18, 2004. The defendant's conduct with respect to the conspiracy in count 1 continued after his November 18, 2004 conviction and, applying the reasoning of *United States v. Hughes,* supra, so the Cuyahoga County conviction constitutes a punctuated occurrence with a limited duration separate from the conspiracy named in count 1 of the superseding indictment.

(1:07 CR 338)

Finally, the defendant advances the argument that the question of whether the Ohio conviction, as set forth in paragraph 68 of the presentence report, was a part of the drug conspiracy as charged in Count 1, against the background of the Supreme Court's uncertainty featured in *Shepard v. United States*, supra, should have been submitted to the jury.  The Court disagrees.

(b) The defendant argues that the imposition of the enhanced penalty for count 1, i.e., a life sentence, is greater than necessary to achieve the goals of sentencing in direct conflict with the sentencing mandate under 18 U.S.C. § 3553(a).

The Congress, in its infinite wisdom, has invoked legislative power calling for mandatory sentences under a variety of situations.  The courts have uniformly held that the statutory requirement of a mandatory minimum sentence overrides and trumps any analysis by the court within the provisions of 18 U.S.C. § 3553(a).  Until a higher court adopts the argument advanced by the defendant, the Court will continue to impose mandatory minimum sentences, even where the Court is of the personal view that the mandatory minimum sentence is excessive, when considering the sentencing directives set forth in 18 U.S.C. § 3553(a).

(c) The issue of the amount of drugs attributable to the defendant requires an analysis of the testimony regarding the defendant's conduct.

The presentence report fixes the offense level as either a 36 or a 38.  As the Court has determined that a life sentence is required because of the defendant's two prior felony drug convictions, a detailed analysis of the testimony to support paragraph 51 of the presentence report appears unnecessary.  However, the Court notes that many of the co-defendants testified

(1:07 CR 338)

in support of the government's case, i.e., Richard White, Derrick Wade, Cynthia Johnson, Alicia Bryant, Canie Gibson, Marlene Brown, Janice Johnson, Jarese Pannell, Anthony Harris and Robert Gooch.  Their testimony is summarized in the presentence report as follows:

> ... As a result of the investigation, on May 5, 2007, a telephone wire tap was initiated.  ARKEEFE SHERRILLS was identified as the head of the conspiracy, who, aided by his wife, Shaneka Pittman/Sherrills and Richard White enlisted multiple couriers to transport cocaine, PCP and marijuana into the Cleveland area for distribution.  The main Cleveland based distributee was identified s Derrick Wade.
>
> During the course of the conspiracy, it was not unusual for the couriers to carry packages of money in the girdles when traveling to Los Angeles or Las Vegas. Others, who were not identified as couriers, included Cynthia Johnson, who was a girlfriend of Sherrills who was used to pick up, store, and distribute a shipment of PCP, and Anthony Harris, who owned a business named Popular Demand. Harris' business had a Western Union facility, that involved money laundering. James Austin was another local recipient and a middle man, who brokered deals for the cocaine.
>
> A number of shipments were interdicted, and reflected in the indictment. On October 9, 2006, Alraina and Sheronda Ligon, Aleshia Bryant and Jarese Pannell were interdicted after returning to Detroit from Las Vegas. They were picked up by Shaneka Pittman and driven into Ohio. They were stopped by law enforcement, and found to be each carrying approximately 1 1/2 kilograms hidden in girdles they were wearing. At the time of the stop, Shaneka Pittman produced a phony drivers license in the name of one of her children.
>
> On January 17 and 18, 2007, Donald Littleton was stopped after driving to Columbus to pick up three couriers, Marlene Brown, Janaye Thornton and Janice Johnson. Each courier had approximately one kilogram of cocaine hidden in a girdle. Littleton produced a phony identification in the name of Thomas Jones.
>
> On May 4, 2007, a series of telephone calls were intercepted between Richard White in California and ARKEEFE

(1:07 CR 338)

SHERRILLS, who were setting up the last trip, where Germaine Cardwell, Johnny Hawkins and Canie Gibson flew into Akron, Ohio. James Austin arranged for John Frank Largent and Howard Gavin to meet the flyers and receive a kilogram of cocaine from each of them.

The investigation further revealed that Robert Gooch, III, drove quantities of PCP and marijuana to the Cleveland area for SHERRILLS. Sebastian Timothy Randolph drove quantities of PCP as well. Tonya Nettles was a Cleveland distributee of quantities of PCP....

The trial established that starting in 2004, ARKEEFE SHERRILLS and Shaneka Pittman began to body carry kilos of coke by putting it between their legs and securing it with a girdle.  They got to a point in time where they were successful enough that they began to hire others to carry the drugs since that was the most dangerous time.  When ARKEEFE SHERRILLS was jailed in California and Ohio, Shaneka Pittman kept the conspiracy going....

On October 5, 2006, couriers Canie Gibson and John Hawkins were surveilled after landing in Cleveland.   They were picked up by Shaneka Pittman and driven to a downtown hotel.  According to testimony, the kilos were provided to the couriers by co-conspirators Richard White usually and were delivered to either ARKEEFE SHERRILLS, Shaneka Pittman, or Derrick Wade.

On October 10, 2006, four couriers who had been driven to Detroit on October 8, 2006, were picked up in Detroit by Shaneka Pittman and when their vehicle was stopped, approximately six kilograms of cocaine were recovered.  Two of the couriers testified and advised that Shaneka Pittman had provided the kilograms of cocaine to them after they were picked up in Detroit.  Shaneka Pittman presented an Ohio drivers license in the name of Alexis Price. (Alexis Price is a 9 year old daughter of Shaneka Pittman)

On January 18, 2007, three couriers were stopped after landing in Columbus and being picked up by co-conspirator Donald Littleton. Each courier had approximately a kilogram or cocaine between their legs inside a girdle.  They identified ARKEEFE SHERRILLS, and Shaneka Pittman as the people they had received packages of cocaine from or had given money packages

(1:07 CR 338)

>to on this and other trips.
>
>In March 2007, during 60 days of wiretapping, ARKEEFE SHERRILLS arranged for Robert Gooch to drive approximately 40 pounds of marijuana to Cleveland on one occasion and 7 kilograms of PCP on another occasion.  The pot was distributed by Derrick Wade and Sebastian Randolph.  The PCP was delivered to Cynthia Johnson....
>
>On May 5, 2007, after a series of phone calls were intercepted between Richard White and ARKEEFE SHERRILLS, three couriers were intercepted after they flew into Akron, Ohio and seized three kilograms of cocaine.
>
>During the investigation, the government became aware of Anthony Harris.  He was a co-conspirator in the money laundering.  He owned a business called Popular Demand.  In June of 2006, as a result of a totally separate drug investigation, Harris' business was searched and $353,000 in cash was seized.  According to testimony at trial, the money was SHERRILLS and Harris was holding it for him while he completed a sentence at a halfway house.  During the Title III there were numerous calls between ARKEEFE SHERRILLS and Harris concerning their financial dealings.  According to testimony, Harris incorporated a business and opened a checking account at the request of SHERRILLS.  SHERRILLS used the business and checking account to launder his drug proceeds.  This was corroborated by the wire tap phone calls.
>
>Wire taps phone calls revealed that ARKEEFE SHERRILLS rented an apartment from Anthony Harris.  When arrests and searches were done on May 18, 2007, a loaded hand gun was found in this apartment as well as a number of papers which clearly established that ARKEEFE SHERRILLS and Shaneka Pittman stayed there....

Counsel for the government, in connection with the issue of quantity of drugs chargeable to both Arkeefe Sherrills and Shaneka Pittman, has engaged in an extensive outline in its sentencing memorandum (Docket No. 533) to support the quantity of controlled substances

11

(1:07 CR 338)

chargeable to Pittman.  The government's analysis begins at page 32 of the sentencing memorandum and continues through page 39 of its sentencing memorandum.  Those pages, 32 through 39, are attached hereto as Appendix II, pages 1 through 8 to assist the reviewing court, assuming an appeal, and the Court declares that the government's analysis as set forth in Appendix II as to quantity, accurately reflects the testimony in extensive transcripts in this case.  As a consequence, the Court finds that the offense level for defendant Arkeefe Sherrills is 36.  The Court notes that the recent decision of the Sixth Circuit in *United States v. Gonzalez* 501 F.3d 630, 642 (6th Cir. 2007) stands for the proposition that under the provisions of U.S.S.G. § 1B1.3 in connection with a conspiracy, a defendant found to be a part of the conspiracy is responsible for the amount of the drugs involved in the drug conspiracy which he could have reasonably foreseen.  In this case, Sherrills' and Pittman's continuing supervision and control of the extensive conspiracy involving the transportation of cocaine from California to Ohio using multiple couriers on multiple occasions, leads to a finding by the Court that the defendant is responsible for more than 50 kilos of cocaine as well as the other controlled substances outlined in paragraph 51 of the presentence report.  Consequently, the Court finds the base offense level to be 36.

  (d) The issue of whether four levels should be added to the offense conduct based on the allegation that the defendant was a leader or organizer merits scant attention.  The indictment charged a conspiracy involving 25 defendants.  During the defendant's trial, nine members of the conspiracy offered testimony for the government and clearly identified Arkeefe Sherrills as the leader and organizer of the vast conspiracy involving the transportation of cocaine and other

12

(1:07 CR 338)

drugs into the Cleveland area.  The defendant's objection to four levels for his role in the offense is without merit and is denied.

    (e)    The indictment in this case was returned on the 12th day of June, 2007 with a superseding indictment filed on August 7, 2007, and named the defendant Arkeefe Sherrills.  He was eventually arrested and arraigned in the court on the 28th day of September, 2007.  The government presented evidence that the defendant applied for and obtained a Mississippi driver's license under a false name of James Young (Tr. at 1177-78) after his indictment and prior to his arrest.  The government contends that such conduct, together with the fact he was a fugitive is sufficient to support a two level for obstruction.  However, the court does not find any evidence that the defendant knew he had been indicted so the label of fugitive is not supported by the evidence.  The defendant's objection to the addition of two levels for obstruction is granted.

### IV.  Conclusion

The Court finds the base offense level to be 36.  Two levels are added pursuant to § 2D1.1(b)(1) because the defendant possessed a dangerous weapon and an additional four levels pursuant to U.S.S.G. § 3B.1(a) as the Court finds that the defendant was an organizer or leader of five of more participants in the offense.  Consequently, the Court finds the adjusted offense level to be 42 and the defendant's criminal history category is V due to ten criminal history points and without the necessity of adding an additional level for the defendant being a career offender.  Under such a calculation, the advisory guidelines range is 360 months to life.  However, the fact that the defendant has two prior felony drug convictions in addition to the conviction of count 1

(1:07 CR 338)

requires a life sentence and negates any consideration of a downward varianace.[3]

  IT IS SO ORDERED.

| July 29, 2008 | /s/ David D. Dowd, Jr. |
|---|---|
| Date | David D. Dowd, Jr. |
| | U.S. District Judge |

---

[3]The Court is reluctant to sentence a defendant to life in prison where there is no loss of life.  However, the Court finds that it is not entitled to consider a downward variance with a sentence less than a life sentence.  If the Court had the power to consider a downward variance from a life sentence, it would probably do so notwithstanding the conduct of the defendant as demonstrated by the evidence in this case.